UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF FLORIDA
PANAMA CITY DIVISION

DONNA AUSTIN, ET AL.,

        CASE NO. 4:09CV97-RS/WCS

    Plaintiffs,

v.

DEPARTMENT OF CORRECTIONS,
STATE OF FLORIDA,

    Defendant.

_____/

## DEFENDANT'S MEMORANDUM OF LAW IN SUPPORT OF DEFENDANT'S RENEWED MOTION TO SEVER AND/OR FOR SEPARATE TRIALS

Defendant, Department of Corrections, State of Florida (hereinafter "DOC"), in accordance with N.D. Fla. Loc. R. 7.1(A), submits the following memorandum of law in support of its Renewed Motion to Sever and/or For Separate Trials:

**I.**      **Legal Standard for Severance or Separate Trials**

Rule 20(a), Fed. R. Civ. P., provides that "persons may join in one action as plaintiffs if:

(A)      they assert any right to relief jointly, severally, or in the alternative with respect to or arising out of the same transaction, occurrence, or series of transactions or occurrences; and

(B)      any question of law or fact common to all plaintiffs will arise in the action.

However, Rule 20(b), Fed. R. Civ. P., provides that a court may order separate trials "to protect a party against embarrassment, delay, expense, or other prejudice that arises from including a person against whom the party asserts no claim and who asserts no claim against the

party." Rule 42, Fed. R. Civ. P., also provides in part that "… to avoid prejudice, or to expedite and economize, the court may order a separate trial of one or more separate issues, claims…"

Additionally, upon misjoinder of parties, Rule 21, Fed. R. Civ. P., provides that a court can, either upon motion or *sua sponte*, add or drop a party, or sever any claims against a party. The appropriateness of a request for severance is generally governed by the following four factors:

> (1) whether the issues sought to be tried separately are significantly different from another, (2) whether the separable issues require the testimony of different witnesses and different documentary proof, (3) whether the party opposing the severance will be prejudiced if it is granted and (4) whether the party requesting the severance will be prejudiced if it is not granted.

Jeanty v. County of Orange, 379 F.Supp. 2d 533, 548-49 (S.D.N.Y. 2005).

The decision of whether to sever parties or claims from an action or order separate trials is left to the broad discretion of the district court. Id. at 549. Although the prerequisites for permissive joinder are construed generously to permit the broadest scope of action commensurate with traditional notions of fair play, the court possesses equally broad discretion to sever parties and claims based upon misjoinder. DIRECTV, Inc. v. Brown, 2003 WL 25569731 (M.D. Fla 2003). Logic dictates that the more numerous the plaintiffs, the claims, and the individualized defenses to those claims, the greater the danger of a jury being mislead or confused by a single, mammoth proceeding, or even multiple, large trials.

Thus, as Rules 20(b), 21 and 42(b) collectively require the district court to balance considerations of convenience, economy, expedition, prejudice, and commonality of the issues, witnesses and documentary evidence, the propriety of ordering severance or separate trials naturally depends on the facts and circumstances of each case. Id. The marked, individual distinctions between and among each of the 17 plaintiffs' claims as described in DOC's motion

and demonstrated by the materials filed clearly demonstrate the necessity of trying these claims separately.

## II. Prior Litigation.

### A. The Rudolph Case

As the Court noted in its August 12, 2009 order [Doc. 35], twelve similar claims were tried in a consolidated trial in Rudolph, et al. v Department of Corrections, U. S. District Court for the Northern District of Florida, Case No. 5:06cv56-RS. There are, however, several readily apparent distinctions between Rudolph and the instant litigation. First and foremost, DOC did not seek separate trials or severance in Rudolph, and thus the Court did not have the issue before it. Since the Court did not have the opportunity to exercise its discretion pursuant to such a motion, the fact that Rudolph tried twelve individual claims together is certainly not precedential. Second, the temporal focus of Rudolph covered a relatively a short period of time, not the more than 10 year span at issue here, and all of the plaintiffs worked at a single institution, Washington CI, where a single warden was at the helm for the great majority of the time in question. Here, four separate institutions plus the Santa Rosa Annex's inpatient psychiatric wing are the sites implicated. The widely varying missions and inmate populations of the various institutions and numerous administration changes over the years make this case the antithesis of the "one stop shop" represented by Rudolph. Finally, the Rudolph case did not involve evidence of the tremendously complicated process of consolidating thousands of close management inmates – the so called "worst of the worst" – from around the State into a few designated institutions such as Santa Rosa, or the standards of reasonableness in addressing the offensive conduct in the midst of such a massive undertaking.

In its November 9, 2006 decertification order in Rudolph [Doc. 211][1], this Court expressly recognized many of the individual aspects of proof and defense of these claims which demonstrate the need for separate trials. Referencing the standard for proving a hostile work environment case as articulated by Harris v. Forklift Sys., 510 U.S. 17, 23 (1993), the Court opined as follows:

> Such an analysis, particularly in this case, requires individualized rather than generalized proof for the following reasons:
>
> 1. Plaintiffs were employed in various capacities;
> 2. Plaintiffs had differing amounts of contact with the inmates;
> 3. Plaintiffs were employed in various prison facilities throughout Florida; and
> 4. Plaintiffs were supervised by different managerial personnel.
>
> These differences impact both the subjective *and* objective components of the case. The capacity in which the plaintiff was employed and the amount of contact, the plaintiff had with the alleged perpetrators are certainly relevant in determining the frequency and severity of the alleged harassment. Further, the environment and culture within each institution varies from one prison facility to another.
>
> \*\*\*
>
> The policies and procedures of managers, supervisors and correctional officers at individual institutions are of particular significance in this case.
>
> \*\*\*
>
> Evidence indicates that the degree of responsiveness to inmate behavior by prison staff varies across institutions; duty and shift assignments are determined at the institutional level; and the inmate populations housed at each facility differ. ... This case, in essence, requires individualized forms of proof not only across plaintiffs but across *institutions* as well.
>
> \*\*\*
>
> [D]amages issues abound in this case that are unique to each plaintiff. Some plaintiffs assert that they have suffered economic damages, and others indicate that they have not. Some have claimed physical injuries and others have not. Some have seen counselors, psychologists, or physicians and others have not. Non-economic damages for pain and suffering, mental anguish and humiliation are inherently individual in nature, [and] compel individualized inquiry.

---

[1] A complete copy of the order was attached to DOC's initial motion to sever.

*Id.* at pp. 10-12. Just as these many individualized factors defeated the "predominance" and "superiority" requirements for class certification in Rudolph, so do they require severance and separate trials in the current case.

### B.  The Beckford Case

DOC acknowledges and apprises the Court of the recent Eleventh Circuit decision in Rudolph's sister case, Beckford v. DOC. In Beckford, which was tried in the Southern District of Florida, DOC did move for severance of the plaintiffs' claims, and the trial court denied the motion. The Eleventh Circuit has recently ruled that the district court did not abuse its discretion in trying the individual claims together. Beckford v. Florida Dept. of Corrections, __ F. 3d __, 2010 WL 1818052, *10 (11th Cir. May 7, 2010). However, Beckford is not yet final[2], and the same factual distinctions noted above between the earlier litigation and this case apply. Additionally, and very importantly, the Circuit Court's opinion does not address at all the significance of the verdicts rendered in Beckford. Despite differences in length of employment which varied from 4 months to 21 years; despite significant disparities in age, life circumstances and alleged damages; despite the plaintiffs serving in many different job classifications, the jury returned uniform verdicts of $45,000 for each and every Beckford plaintiff. DOC believes, and common sense would seem to indicate, that the jury simply could not parse out the individual damages issues in the consolidated trial of 14 plaintiffs' claims as the law of Title VII requires, and it consequently awarded identical amounts despite the individuality of each claim.

The Beckford Court's heavy reliance on A.M. Alexander v. Fulton County, 207 F.3d 1303 (11th Cir. 2000), *overruled on other grounds,* Manders v. Lee, 338 F.3d 1304 (11th Cir. 2003), in affirming the trial court's decision renders the panel's failure to address these identical

---

[2] A petition for rehearing en banc, requesting that the full court review the panel decision on the severance ruling and other issues, was filed May 28, 2010.

verdicts inexplicable. In A.M. Alexander, the Eleventh Circuit acknowledged a "real potential for confusion among jurors and for unfair prejudice to a defendant where there are large numbers of Plaintiffs..." and "urge[d] care in joining together in one case ...multiple claimants...," *Id.* at 1325, but ultimately held that the denial of severance in that 18-plaintiff disparate treatment case was not an abuse of discretion. However, the *mixed verdict* reached by the Alexander jury was a strong factor in persuading the Court that the jury was not confused by the joinder of the numerous claims. *Id.* at 1326. The Court held that "a mixed verdict ...refuted any allegation of compelling prejudice" due to the consolidated trial. *Id.*

In stark contrast, the verdicts in Beckford were identical. Following the inescapable logic of A.M. Alexander and the cases cited therein, if mixed verdicts demonstrate absence of prejudice, undifferentiated verdicts surely substantiate juror confusion and manifest prejudice unfair to the defendant.

A further linchpin of the recent Beckford opinion is that "the defense of the Department, as it was explained to the district court and presented at trial, did not differ from claim to claim." Beckford at *10. Here, while there certainly will be some common elements of the defenses offered as to each plaintiff's claims, DOC will individually prove its reasonable responses to each and every identified act of gunning. This will be accomplished through presentation of the outcome of each disciplinary report written by plaintiffs for the sexual misconduct of the inmates and by tracking the classification, disciplinary and movement history of identified offenders. This evidence will necessarily be unique both to every plaintiff and to every offending inmate.

Thus, the Beckford Court's current ruling that the Southern District trial court did not abuse judicial discretion in denying severance does not dictate the result in this case nor diminish this Court's discretion to sever the claims and require separate trial. On the contrary, the unfair

prejudice to DOC with regard to the individual consideration that must be given both the issues of liability and damages is precisely why the Court should exercise its discretion as requested by DOC.

## III. Further Analysis

DOC is mindful of the practical burdens which could result from conducting 17 separate trials as opposed to a single, consolidated trial of plaintiffs' claims. However, such burdens, if they manifest, cannot take precedence over the administration of justice and the right of the Defendant to a fair trial. As noted by the court in Acevedo Garcia v. Vero Monroig, 204 F.R.D. 26 (D.C. Puerto Rico 2001), "A paramount consideration at all times in the administration of justice is a fair and impartial trial to all litigants. Considerations of economy of time, money and convenience of witnesses must yield thereto." Id. at 30, citing, In re Bendectin Litigation, 857 F.2d at 290, 308 (6th Cir.1988).

In order to establish a prima facie case of sexual harassment, each individual Plaintiff will have to prove how she personally perceived and responded to this behavior. The defense on this element of the case will also be highly personalized and Plaintiff-specific. Allowing multiple plaintiffs to testify in this type of proceeding would inevitably result in the repeated introduction of otherwise inadmissible "me too" evidence. See, e.g., Wyvill v. United Companies Life Insurance Co., 212 F.3d 296, 302 (11th Cir. 2000) (anecdotes about other employees cannot establish that discrimination was the company's standard operating procedure); see also Anderson v. Consolidated Rail Corporation 2000 WL 12011456 (E.D. PA 2000); and Rauh v. Coyne, 744 F.Supp. 1181, 1183 (D. DC 1990).

This concern about inadmissable evidence permeating the trial was precisely the reason the court in Bailey v. Northern Trust Co., 196 F.R.D. 413, 517-18 (N.D. Ill. 2000), required

separate trials. Significantly, unlike the diversity of the 17 plaintiffs in the instant case, the five Bailey plaintiffs were all African-American females alleging race discrimination. Id. at 514. Notwithstanding common facts based on the plaintiffs working in the same department, the court held that "it would be highly prejudicial to defendant for all plaintiffs' cases to be presented to one jury." Id. at 517. A jury cannot be expected to recall with the necessary precision each Plaintiff's testimony with respect to her individual reactions to this behavior; the life experiences of each Plaintiff which might affect her reactions to the behavior; and the medical, social, or psychological impacts asserted by her to have resulted from the conduct, while at the same time ignoring a tidal wave of such evidence from and about her co-Plaintiffs.

The Ninth Circuit recognized the inherently unfair prejudice of to a defendant of such a parade of evidence in the ADEA case of Coleman v. Quaker Oats Co., 232 F. 3d 1271 (9th Cir. 2000). The Court held that it was not an abuse of discretion to sever the age claims of 10 plaintiffs, where, like Title VII claimants, those parties had the burden of proof to demonstrate individualized liability and damages. The Coleman court ruled as follows:

> Ten plaintiffs joined in the first complaint. All ten were fired in the RIFs and all ten alleged age discrimination. Considering Quaker's motion for severance, the district court first found that the plaintiffs' case met both prongs of Rule 20(a). The court then examined the potential prejudice to Quaker resulting from joinder and concluded that severance was appropriate. The district court found that Quaker would be prejudiced by having all ten plaintiffs testify in one trial. See Moorhouse v. Boeing Co., 501 F.Supp. 390, 393 n. 4 (E.D.Pa.) (stating that "**even the strongest jury instructions could not have dulled the impact of a parade of witnesses, each recounting his contention that defendant laid him off because of his age**"), aff'd, 639 F.2d 774 (3d Cir.1980). In addition, the district court emphasized the danger of jury confusion. For each plaintiff, the jury would have had to examine individually his or her employment history as well as the explanations given by Quaker for not retaining him or her, explanations that would require the testimony of each employee's supervisors and raters.
>
> As noted above, the court weighed the interests of judicial efficiency and found them outweighed by the potential prejudice to Quaker. . . . The district court properly considered the potential prejudice to Quaker created by the parade of

> terminated employees and the possibility of factual and legal confusion on the part of the jury. . . . [We] conclude that the district court did not abuse its discretion when it granted Quaker's motion to sever the cases.

Id. at 1296-1297.

In addition to the requirement for an independent and subjective showing of offensiveness, Plaintiffs will each have unique witnesses and evidence describing the circumstances of their claims. The inmate(s) who misbehaved, the officers who purportedly failed to respond, the co-workers who witnessed the event, everyone in the chain of command for processing the DR, the people who took corrective action, the extent to which centralized DOC policies and procedures were followed, and those who investigated the charges will all be individualized to the Plaintiff. Documentary evidence will likewise by voluminous and plaintiff-specific. Dozens of potential witnesses have been identified in association with these 17 plaintiffs.

Similarly, Plaintiffs must also offer specific evidence as to their own individual damages.[3] The danger of confusion and prejudice occasioned by allowing witness after witness to present damages evidence which is not germane to their co-Plaintiffs is again manifest ~ a jury could easily be mislead into believing that the experiences of one plaintiff were the experiences of all; and that damages suffered by one were similarly suffered by many, without regard to differing individual circumstances.[4]

Two cases in which the district courts found improper joinder, severed the claims, and ordered separate trials are particularly instructive. Thompson v. Ingalls Shipbuilding 2006 WL 2385324 (S.D. Miss. 2006), involved 81 claimants who alleged disparate treatment based on race

---

[3] . "…(C)ompensatory damages for emotional distress and other forms of intangible injury will not be presumed from a mere violation of constitutional or statutory rights." Allison v. Citgo Petroleum Corp. 151 F.3d 402, 416-7 (5th Cir. 1998).

[4] As apparently happened in Beckford.

and a racially hostile work environment. The factual background of the case in terms of the size of the defendant company and the breadth of employment classifications occupied by the plaintiffs is closely analogous to the current case:

> Defendant has presented evidence to demonstrate that the shipyard is a vast facility, occupying 789 acres, and spanning several different locations. The Plaintiffs in this lawsuit work in more than 20 different departments, sought promotions or challenge promotion decisions in different physical locations in the shipyard, and challenge promotion decisions made by numerous different decision-makers.

Id. at *2. The magistrate severed the case into individual cases for each plaintiff, reasoning that while permissive joinder is viewed favorably in the context of some employment discrimination cases, joinder is inappropriate and should be denied

> where the prejudicial effects of other witnesses' alleged discriminatory experiences outweigh their probative value where, for example, the alleged discrimination occurs during different time periods, involves different supervisors making the challenged decisions, or the alleged discrimination happens at geographically removed places.

Id., citing Alexander v. Fulton County, 207 F.3d 1303, 1324 (11th Cir.2000)(en banc) (citing cases where joinder was denied).[5]  The Ingalls also court recognized that the recovery of damages would require personalized proof. Id., citing Allison v. Citgo Petroleum Corp, 151 F. 3d 402, 419 (5th Cir. 1998) ("the recovery of compensatory and punitive damages in Title VII cases requires individualized and independent proof of injury to, and a means by which discrimination was inflicted upon, each class member.")

Neither the Plaintiffs' claims of a centralized pattern of discrimination nor the practical logistics of conducting 81 separate trials deterred the Ingalls court from severing the claims in the interest of justice and effective management of the claims:

---

[5] Logic dictates that where, in addition to these factors, the allegations of the underlying misconduct are of a particularly repulsive nature, it will be even more difficult for the jury to separately evaluate the issues relevant to each plaintiff.

> Most, if not all, of the central claims of discrimination will require different witnesses and documentary proof. Although severing the claims will result in a greater number of trials, severance will allow the Court to better manage and resolve the individual claims of Plaintiffs.
>
> In order to manage these cases in an effective and economical manner, the Court finds that the claims of the individual Plaintiffs should be severed into separate causes of action, each requiring a separate complaint.

Id. at *3.

In Disparte v. Corporate Executive Board, 223 F.R.D. 7 (D.C. 2004), three plaintiffs, Disparte, Cobb, and Muhammed, all alleged that their employer, CED, had discriminated against them pursuant to a pervasive atmosphere of racial bias. Like the Plaintiffs here, each of the Disparte plaintiffs were employed in different positions within the company, had different supervisors, and suffered the alleged discrimination at the hands of different people. The court severed one plaintiff from the other two on the following rationale:

> [T]he Court concludes that plaintiffs Cobb and Muhammad are improperly joined with Disparte. While the three plaintiffs' claims are allegedly logically related to the allegation of a company wide pattern of discrimination at the CEB, Disparte worked in a different capacity, in a different department, under different supervisors and offers different evidence of racial discrimination than Cobb and Muhammad. *Moore v. New York Cotton Exchange,* 270 U.S. at 610, 46 S.Ct. 367; *Alexander,* 207 F.3d at 1324; *Mosley,* 497 F.2d at 1331. Allowing Disparte to pursue his claims in a joint trial with Cobb and Muhammad would prejudice the defendant because there is a significant likelihood that a single jury would be confused by the different items of evidence and the different witnesses' testimony. *Smith,* 50 F.R.D. at 523. Thus, different supervisors and job functions among the plaintiffs are factors recognized as potential sources of prejudice. *Alexander,* 207 F.3d at 1324; *Smith,* 50 F.R.D. at 523. . . . [T]he Court finds that it is very probable that the supervisors called to testify in reference to Disparte's claims would have their testimony commingled with the supervisors called to testify in reference to Cobb's and Muhammad's claims, thereby subjecting the defendant to possible prejudice.

Id. at *15 - 16.

Thus, when the facts of the instant case are applied to the legal standards of Rules 20(b), 21, and 42(b), it is clear that separate trials are appropriate here:

> In a complex case with complex issues, justice is often best served if issues are separated. . . . In addressing the issue of prejudice, the courts have usually been concerned with the effect that trying several issues will have on a jury. Prejudice, for instance may occur when evidence is admissible only on a certain issue, and it is feared that the party may be prejudiced in the minds of the jury. . . . . In the present instance, there is a danger that evidence admissible on the issues relating to the conduct [of certain defendants] will "contaminate" the mind of the finder of fact in its consideration of the liability of the other defendant.

Ismail v. Cohen, 706 F.Supp. 243, 251 (S.D. NY 1989), (internal citations omitted).

Nor will the Plaintiffs be prejudiced by an order for separate trials; on the contrary, their burden is to individually prove their cases. As the court in Grayson v. K-Mart, 849 F.Supp. 785, 790 (N.D. Ga. 1994), explained when it granted defendant's motion for separate trials and addressed this issue in an ADEA case:

> They [the multiple plaintiffs] are not "prejudiced" by having to prove defendant's liability to each plaintiff individually. The ADEA does not provide a right for one plaintiff to recover because defendant may have discriminated against another plaintiff of like age.

In Grayson, "there were eleven factual situations and eleven sets of witnesses with testimony pertinent to those situations." Id. at 791. The court observed that "the resulting confusion and prejudice from the scenario presented by a common trial of all plaintiffs' claims against the defendant would be intolerable." Id. at 790 (emphasis added). The court further explained that any "inconvenience" which might result to the plaintiffs as a result of having to try their cases separately was both strongly outweighed by the prejudice to defendant from a consolidated trial, and a logical consequence of bringing causes of action that require individualized proof:

> [P]laintiffs' convenience alone does not allow this Court to ignore the potential prejudice to defendant by proceeding with a consolidated trial of all the plaintiffs' cases. Plaintiffs argue vigorously that they would be prejudiced by having to present, and prove, each plaintiff's case individually. Plaintiffs complain that defendant has pursued a litigation strategy of "divide and conquer," by seeking to focus the finder of fact's attention on the merits of each individual plaintiff's case, without the associated confusion of assessing the merits of ten other factual circumstances at the same time. Plaintiffs' argument is greatly misplaced. Each

plaintiff must prove liability on the part of the defendant with respect to the adverse action defendant took with respect to him. <u>It is precisely this need to focus the jury's attention on the merits of each individual plaintiff's case that counsels against proceeding with these cases in one consolidated trial.</u>

<u>Id.</u> (emphasis added)

The well recognized case of <u>A.M. Alexander v. Fulton County</u>, 207 F.3d 1303, 1324 (11th Cir.2000)(en banc), cited above and relied upon by the <u>Beckford</u> Court, is often urged in support of consolidated rather than separate trials. However, in so ruling, the <u>A.M. Alexander</u> court specifically noted the *absence* of the following prejudicial factors, all of which are *present* in this litigation:

> [T]he prejudicial effects of other witnesses' alleged discriminatory experiences may outweigh their probative value where, for example, the alleged discrimination occurs during different time periods, see, e.g., <u>Annis v. County of Westchester</u>, 136 F.3d 239, 247 (2d Cir.1998); <u>Williams v. The Nashville Network</u>, 132 F.3d 1123, 1130 (6th Cir.1997), different supervisors make the challenged decisions, see, e.g., <u>Annis</u>, 136 F.3d at 246-47; <u>Williams</u>, 132 F.3d at 1130; <u>Mooney v. Aramco Servs. Co.</u>, 54 F.3d 1207, 1221 (5th Cir.1995), or the alleged discrimination happens at geographically removed places, see, e.g., <u>Williams</u>, 132 F.3d at 1130; <u>Mooney</u>, 54 F.3d at 1221.

The presence of these factors, combined with the number of plaintiffs here and the many factual distinctions among them as discussed above, strongly demonstrate the need for individual trials of the plaintiffs' claims, and the Court should exercise its discretion to so order. Alternatively, and at a minimum, the plaintiffs' claims should be severed and tried according to the institutions from which the claims arose; and in the case of Santa Rosa C.I., further separated as to the claims arising from the Q Dorm psychiatric hospital at the Annex of the institution.

Respectfully submitted,

<u>s/ Laura Beth Faragasso</u>
LAURA BETH FARAGASSO

Florida Bar No. 0654604
Email address: lbfaragasso@henryblaw.com
CARRIE ROANE
Florida Bar No. 0192491
Email address: croane@henryblaw.com
J. STEVEN CARTER
Florida Bar No. 896152
Email address: scarter@henryblaw.com
Henry, Buchanan, Hudson,
Suber & Carter, P.A.
P.O. Box 14079
Tallahassee, Florida 32317-4079
(850) 222- 2920 Telephone
(850) 224-0034 Facsimile


s/ James O. Williams, Jr.
JAMES O. WILLIAMS, JR., ESQUIRE
Florida Bar No. 614513
Email address: jwilliams@wlclaw.com
MAURA M. BURGREEN, ESQUIRE
Florida Bar No. 0013316
Email address: mburgeen@wlclaw.com
DAWN MCMAHON
Florida Bar No. 735531
Email address: dmcmahon@wlclaw.com
Williams, Leininger & Cosby, P.A.
1555 Palm Beach Lakes Blvd.
Suite 301
West Palm Beach, Florida 33401
(561) 615-5666 Telephone
(561) 615-9606 Facsimile


**CERTIFICATE OF SERVICE**

I HEREBY CERTIFY that a true and correct copy of the foregoing was served by electronic filing via the CM/ECF system on this 6th day of June, 2010, to counsel for Plaintiffs:

JOHN C. DAVIS
Attorney for Plaintiffs
Florida Bar No. 0827770
Law Office of John C. Davis
623 Beard Street
Tallahassee, Florida 32303
Telephone: (850) 222-4770

Facsimile: (850) 222-3119
Email Address: jdavis623@earthlink.net

C. WES PITTMAN
Attorney for Plaintiffs
Florida Bar No. 220507
Pittman & Perry
432 McKenzie Avenue
Panama City, Florida 32401
Telephone: (850) 784-9000
Facsimile: (850) 872-1969
Email Address: wes@pitmanfirm.com